NUMBER 13-09-00334-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


LARRY ADAMS, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 94th District Court 

of Nueces County, Texas.

 


MEMORANDUM OPINION


Before Justices Rodriguez, Benavides, and Vela


Memorandum Opinion by Justice Rodriguez



 A jury found appellant Larry Adams guilty of the felony offense of evading arrest or
detention using a vehicle and sentenced him to forty years' imprisonment after evidence
of his prior felonies was presented. See Tex. Penal Code Ann. § 38.04(a), (b)(2)(A)
(Vernon Supp. 2009); see also id. § 12.42(d)(4) (Vernon Supp. 2009) (setting out penalties
for repeat and habitual felony offenders). The trial court heard and denied appellant's
motion for new trial, which asserted ineffective assistance of counsel. By twelve issues,
appellant contends the following: (1) the evidence was factually insufficient to support his
conviction; (2-3) counsel was ineffective; (4) the trial court made improper comments on
the weight of the evidence; (5) appellant's sentence was disproportionate to the offense;
(6) the trial court erred in failing to submit a lesser-included offense to the jury; (7) the trial
court improperly instructed the jury on the range of punishment; (8) appellant was denied
the opportunity to testify during the guilt/innocence phase of trial; (9) the jury panel should
not have been informed of a prior conviction for evading arrest; (10) the trial court made
improper comments to the jury panel regarding the range of punishment and his prior
felony convictions; (11) the trial court erred in conducting a hearing outside the presence
of the jury without appellant present; and (12) the prosecutor made an improper jury
argument. We modify the judgment and affirm as modified.

I. Sufficiency of the Evidence (1)

 By his first issue, appellant contends that the evidence is factually insufficient to
support his conviction for evading detention with a vehicle. Specifically, appellant 
complains that the evidence does not establish that (1) he used his vehicle to intentionally
flee from the officer, and (2) the officer was attempting lawfully to detain appellant at the
time he fled.

A. Facts

 At the guilt/innocence phase of trial, Police Officer Stephen Cox testified that on
January 7, 2009, he was on patrol, driving a fully-marked patrol car and wearing his
uniform. At 5:24 a.m. that morning, he was dispatched to the Golla neighborhood, a high-crime area in the refinery district. It was still dark when he responded to a report of "a
suspicious vehicle in the alleyway behind the 1200 block of Golla"; "a dark-colored small
pickup truck in the alleyway, which did not belong there." Officer Cox later explained that
there were two calls about this particular incident. One of the calls reported two people
rummaging through back yards in the area.

 Officer Cox testified that the alleyway was an unpaved utility easement separating
residences from commercial property, an easement not meant to be driven upon by the
residents. Officer Cox further explained that the easements were well-known for providing
burglars and thieves easy access into backyards and that he was "not accustom[ed] to
seeing vehicles going in and out of those easements for any legitimate purposes,
especially not that time of day."

 Officer Cox approached an open field which provided the only access point to the
easement, and he observed appellant's small, red pickup truck backing out of the utility
easement and into the open field. Officer Cox drove over the curb and into the field,
turning on his overhead lights, his take-down lights, and his spotlight to determine what
appellant was doing in the area. Officer Cox agreed that it was clear he was trying to
detain appellant.

 After Officer Cox turned on his lights and was about thirty yards from appellant, he
saw appellant turn his head to the side and look directly at him. Appellant immediately put
the truck into drive and accelerated into the easement, driving past three lots until he was
stopped by an area of thick brush--too thick to pass. Appellant then got out of the vehicle
and fled on foot. Officer Cox shouted, "Police," and yelled for appellant to stop. A short
time later, backup officers caught appellant and returned him to Golla Street.

 Officer Cox testified that he did not see appellant commit any crimes and did not
have a warrant for his arrest. Appellant was not under arrest or detention when Officer Cox
attempted to approach him. There was no proof that appellant was trespassing on
personal property or committing any crime by his presence in the alleyway. Officer Cox
also agreed with the State that he was attempting lawfully to detain appellant.

 On cross-examination, Officer Cox responded that a bike was found in the
easement--"a couple of houses further down" from where the truck stopped. At that time,
Officer Cox could not determine whether the bike was stolen. No one claimed ownership
of the bike, and Officer Cox agreed that no one reported a home being broken into or that
any thefts occurred at that particular time. There was nothing else that "jumped out" at
Officer Cox that he suspected to be stolen. Officer Cox stated that he was attempting to
detain appellant--to question him--when he approached appellant; that he "had more than
enough reasonable suspicion to stop and detain [appellant] and ascertain what he was
doing in the area."

 Martin D. Sanchez, who resided on Golla Street, testified that around 4:00 a.m. on
the morning in question, he saw a vehicle parked under a tree in the alleyway behind his
neighbor's house. He called 911 to report the presence of a "suspicious vehicle." Later,
Sanchez saw appellant walk up to the truck. Sanchez further testified that when appellant
got into his truck, a police car approached "real quick" from around the corner. The patrol
car's lights were on. Appellant went "forward in that direction through the alleyway, . . . but
he finally stopped." When appellant stopped the vehicle, he opened the door and fled, and
the officer yelled for him to stop and "hold it." Appellant jumped over Sanchez's fence. He
ran between the garages and out on to the street in front of the residences.

 Sanchez explained that he did not see appellant reverse the truck or back out of the
alleyway; however, when the officer came up from behind with his "cherry lights" on, he
saw appellant move his vehicle forward or to the right side of the alleyway for
approximately twenty-five feet. Sanchez agreed that Officer Cox turned on his lights before
appellant began to move forward.

B. Standard of Review and Applicable Law

 The court of criminal appeals has set forth the standard for factual sufficiency review
as follows:

 In a factual sufficiency review, the evidence is reviewed in a neutral light
rather than in the light most favorable to the verdict. Evidence can be
factually insufficient in one of two ways: (1) when the evidence supporting
the verdict is so weak that the verdict seems clearly wrong and manifestly
unjust, and (2) when the supporting evidence is outweighed by the great
weight and preponderance of the contrary evidence so as to render the
verdict clearly wrong and manifestly unjust. Although an appellate court's
factual sufficiency review of the evidence allows the court to second-guess
the jury to a limited degree, the review should still be deferential to the jury's
verdict.


Williams v. State, 301 S.W.3d 675, 684-85 (Tex. Crim. App. 2009) (citations omitted), cert
denied, 2010 U.S. LEXIS 4837, 78 U.S.L.W. 3729 (U.S. June 14, 2010) (No. 09-9635). 
Our review of a factual sufficiency challenge should be examined under the principles of
review for a hypothetically correct jury charge. Grotti v. State, 273 S.W.3d 273, 280-81
(Tex. Crim. App. 2008). "'Such a charge [is] one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State's burden of proof
or unnecessarily restrict the State's theories of liability, and adequately describes the
particular offense for which the defendant was tried.'" Villarreal v. State, 286 S.W.3d 321,
327 (Tex. Crim. App. 2009) (quoting Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997)).

 The offense of evading arrest or detention, a Class A misdemeanor, is committed
when the defendant "intentionally flees from a person he knows is a peace officer
attempting lawfully to arrest or detain him." Tex. Penal Code Ann. § 38.04(a). "'[F]leeing
is anything less than prompt compliance with an officer's direction to stop." Horne v. State,
228 S.W.3d 442, 446 (Tex. App.-Texarkana 2007, no pet.). The offense of evading arrest
or detention is raised to a third-degree felony if "the actor uses a vehicle while the actor is
in flight and the actor has been previously convicted [of evading arrest or detention]." (2) Tex.
Penal Code Ann. § 38.04(b)(2)(A). The indictment in the present case tracked the
language of the third-degree felony evading-detention-with-a-vehicle statute and the
habitual, felony-offender statute. See id. §§ 12.42(d)(4), 38.04(a), (b)(2)(A).

C. Analysis

1. Using Vehicle to Intentionally Flee

 Appellant first contends that the evidence is factually insufficient to establish that
appellant knew of the officer's intentions to detain him while he was still in his truck. 
Appellant claims that he only jumped out of his vehicle and fled after he saw the officer
approaching him in the alley.

 Officer Cox, however, testified that, when he turned on his red and blue overhead
lights and his spotlight, he was only thirty yards from appellant and that appellant turned
and looked directly at him. It was then that appellant put his truck in gear and accelerated
away from Officer Cox. Sanchez's testimony differed concerning the location of appellant's
truck and whether appellant was backing his truck when Officer Cox first observed him. 
However, both Officer Cox and Sanchez testified that appellant's truck moved forward,
away from the patrol car, and did not stop immediately after the lights of Officer Cox's
patrol car were activated as Officer Cox pursued appellant's truck. Viewing the evidence
in a neutral light, we conclude that the evidence is factually sufficient to establish that
appellant knew Officer Cox intended to detain him as he was moving forward in his vehicle,
as he fled from Officer Cox. See Williams, 301 S.W.3d at 684-85; Calton, 176 S.W.3d at
234; see also Tex. Penal Code Ann. § 38.04(a), (b)(2)(A).

2. Officer Attempting Lawfully to Detain Appellant

 Appellant also contends that the State failed to sufficiently prove that Officer Cox
was attempting lawfully to detain him. See Tex. Penal Code Ann. § 38.04(a). Through his
argument, appellant suggests that the evidence is insufficient to prove Officer Cox had a
reasonable suspicion to detain him because no crime was being committed in the officer's
presence and nothing was found afterwards for which appellant could have been arrested. 
However, if an officer has a reasonable suspicion to believe that an individual is involved
in criminal activity, the officer may conduct a brief investigative detention. Balentine v.
State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); see also Terry v. Ohio, 392 U.S. 1,
21-22, 27 (1968) (providing that reasonable suspicion must be based on more than a non-specific suspicion or mere "hunch" of criminal activity). A temporary detention will be
justified when the detaining officer has specific, articulable facts which, taken together with
rational inferences from those facts, lead him to conclude that the person detained actually
is, has been, or soon will be engaged in criminal activity. Balentine, 71 S.W.3d at 768;
Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Because this is an objective
standard, we disregard any subjective intent of the officer making the stop and look solely
to whether an objective basis exists. Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App.
2005); see Tanner v. State, 228 S.W.3d 852, 855-59 (Tex. App.-Austin 2007, no pet.)
(concluding that the police has reasonable suspicion to detain the defendant when he and
his companion were seen walking at 3:00 a.m. from a dark area behind a bar that was then
closed for business). A reasonable-suspicion determination is made by considering the
totality of the circumstances. Ford, 158 S.W.3d at 492-93; Garcia, 43 S.W.3d, 530.

 The evidence in this case establishes that Officer Cox responded to pre-dawn
reports of a suspicious vehicle in an unpaved alleyway in a high-crime neighborhood and
of two people rummaging through backyards. This neighborhood was Officer Cox's patrol
area and the alleyways in question were well-known for providing burglars and thieves with
easy access to the backyards. Officer Cox did not generally see vehicles using the
alleyways for legitimate purposes, especially at this time of day. Further, Officer Cox saw
appellant's vehicle in the alleyway. He drove up and turned on his lights. Appellant looked
back at Officer Cox and drove his vehicle further into the alleyway, away from Officer Cox's
patrol car. These are specific, articulable facts which, when taken together with rational
inferences from those facts, could lead Officer Cox to conclude that appellant actually is,
has been, or soon will be engaged in criminal activity. See Balentine, 71 S.W.3d at 768;
Garcia, 43 S.W.3d at 530. Disregarding any subjective intent of Officer Cox and looking
solely to whether an objective basis exists and considering the totality of the
circumstances, we conclude that, based upon his observations, Officer Cox had
reasonable suspicion to detain appellant. See Ford, 158 S.W.3d at 492-93 (whether a
basis for the stop exists is based on an objective standard). Viewing the evidence in a
neutral light, we conclude that the evidence was factually sufficient to support a finding that
the officer had attempted lawfully to detain appellant. See Williams, 301 S.W.3d at 684-85;
Calton, 176 S.W.3d at 234; see also Tex. Penal Code Ann. § 38.04(a).

 In summary, giving deference to the jury's verdict, we conclude that the evidence
supporting the verdict was neither so weak nor so outweighed by the great weight of any
contrary evidence as to make the verdict seem clearly wrong and manifestly unjust. See
Williams, 301 S.W.3d at 684-85. We overrule appellant's first issue.

II. Ineffective Assistance of Counsel

 By issues two and three, appellant challenges the effectiveness of his trial counsel's
assistance. Appellant first complains of counsel's failure to object to the admission of
certain testimony and of her elicitation of other testimony. He then complains of counsel's
failure to obtain evidence which appellant contends is exculpatory.

A. Standard of Review

 Strickland v. Washington sets forth the standard by which we review claims of
ineffective assistance of counsel. 466 U.S. 668, 688 (1984); see Stafford v. State, 813
S.W.2d 503, 506 (Tex. Crim. App. 1991) (en banc). In order to determine whether
appellant's trial counsel rendered ineffective assistance at trial, we must first determine
whether he has shown that counsel's representation fell below an objective standard of
reasonableness and, if so, then determine whether there is a reasonable probability that
the result would have been different but for counsel's errors. Strickland, 466 U.S. at 688,
690-94. In assessing a claim of ineffective assistance of counsel, we indulge a strong
presumption that "counsel's conduct fell within a wide range of reasonable representation." 
Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). Appellant must overcome
the presumption that, under the circumstances, the challenged action might be considered
sound trial strategy. Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); Stafford,
813 S.W.2d at 508-09.

B. Testimony Regarding Methadone, a Syringe, and a Bike

 By his second issue, appellant contends his counsel was ineffective when, at the
guilt/innocence phase of the trial, she failed to object to testimony concerning methadone
and a syringe and testimony about a bike. He argues that "[t]he jury should never have
heard the evidence regarding the stolen bike or that the appellant was a drug addict."

1. The Methadone and Syringe

 During the guilt/innocence phase of the trial, Officer Cox testified on direct
examination by the State, without objection, that he found a locked box containing
documents with appellant's name on it and several doses of methadone in appellant's
truck. Officer Cox also testified that appellant was not charged with an offense for the
methadone because it had been prescribed for him. While Officer Cox testified on re-direct
that a syringe was found in appellant's truck, on re-cross he admitted that he did not know
whether the syringe could have been used to administer the methadone.

 Further, at the hearing on appellant's motion for new trial, appellant's trial counsel
testified that she had "no problem" with evidence of the methadone because it was
prescribed for appellant. Counsel also testified that she did not "[make] an issue of the
methadone" and that "[appellant] wasn't charged with possession or anything of that sort
. . . so [she] didn't think it harmed him very much."

 The record developed at the hearing on the motion for new trial contains no support
for appellant's argument that his trial counsel was ineffective because she failed to object
to the admission of evidence that methadone and a syringe had been found in appellant's
truck. While possession of methadone and a syringe may suggest an addiction, it may
also support the position that one is confronting his problem, not running from it. Thus, the
record before this Court, including the complained-of testimony at trial and appellant's trial
counsel's testimony at the hearing, does nothing to rebut the presumption that trial
counsel's actions and decisions regarding the admission of evidence of the methadone and
syringe were reasonably professional and were motivated by sound trial strategy. See
Garcia, 57 S.W.3d at 440; Stafford, 813 S.W.2d at 508-09; see also Salinas, 163 S.W.3d
at 740.

2. The Bike

 At trial, appellant's counsel asked Officer Cox if a bike was found at the scene. He
responded that a bike was found further down the easement and that he suspected the
bike was stolen. However, Officer Cox also stated that none of the neighbors claimed the
bike and there were no reports of a stolen bike or other evidence to indicate that it was
stolen. Counsel elicited testimony from Officer Cox that there was nothing in appellant's
possession at the time that was suspected to be stolen and that Officer Cox had no proof
that appellant had committed any other crimes. In her closing argument, appellant's trial
counsel emphasized that, even though Officer Cox assumed that the bike was stolen, there
was no evidence that appellant had stolen it.

 Furthermore, at the hearing on appellant's motion for new trial, when asked whether
her trial strategy was "to get a conviction for the lesser[-]included misdemeanor evading?",
appellant's trial counsel responded as follows:

 Yes, that was a trial strategy. After discussing the case with the defendant,
he never really gave me any kind of trial strategy. His main, main issue was
the bike and the receipt for the bike. But as far as him being in the alley, why
he was there, what put him there, I never got details from him. All he kept
telling me [was] he didn't remember, he didn't remember. I never got names
of witnesses, I never got people who he was with. So we went out to the
scene, we went and investigated, we spoke to Martin Sanchez, and he's the
one that basically gave us our trial strategy which is he saw him running on
foot.


This is the only testimony provided by counsel that mentions the bike and her trial strategy.

 Based on the trial testimony and the testimony at the hearing, we conclude that the
record does not rebut the presumption that trial counsel's actions and decisions involving
evidence of the bike found in the alleyway were reasonably professional and were
motivated by sound trial strategy. See Garcia, 57 S.W.3d at 440; Stafford, 813 S.W.2d at
508-09; see also Salinas, 163 S.W.3d at 740. Accordingly, we overrule appellant's second
issue.

C. Evidence Regarding the Release of the Bike

 By his third issue, appellant complains that his trial counsel was ineffective because
she failed to obtain exculpatory evidence--a release form from the Corpus Christi Police
Department (CCPD)--that would have established he owned the bike. Appellant claims
that this form "proved he had shown receipt of ownership of the bike to have it returned to
him." He asserts that his counsel had a duty to investigate and that her performance was
deficient. We disagree.

 When assessing the reasonableness of an attorney's investigation, a reviewing court
must consider the quantum of evidence already known to counsel and whether the known
evidence would lead a reasonable attorney to investigate further. Ex parte Martinez, 195
S.W.3d 713, 721 (Tex. Crim. App. 2006) (citing Wiggins v. Smith, 539 U.S. 510, 527
(2003)). As the Supreme Court has stated concerning the duty to investigate:

 Strategic choices made after thorough investigation of law and facts relevant
to plausible options are virtually unchallengeable; and strategic choices
made after less than complete investigation are reasonable precisely to the
extent that reasonable professional judgments support the limitations on
investigation. In other words, counsel has a duty to make reasonable
investigations or to make a reasonable decision that makes particular
investigations unnecessary. In any ineffectiveness case, a particular
decision not to investigate must be directly assessed for reasonableness in
all the circumstances, applying a heavy measure of deference to counsel's
judgments.


Wiggins, 539 U.S. at 521-23; see also Martinez, 195 S.W.3d at 721; Ex parte Briggs, 187
S.W.3d 458, 466-67 (Tex. Crim. App. 2005). Moreover, appellant proves his claim of
ineffective assistance only if the consequence of the failure to investigate is that the only
viable defense available to him is not advanced and there is a reasonable probability that,
but for counsel's failure to advance the defense, the result of the proceeding would have
been different. Strickland, 466 U.S. at 694; Castellano v. State, 49 S.W.3d 566, 576 (Tex.
App.-Corpus Christi 2001, pet. ref'd).

 At the hearing on his motion for new trial, appellant testified that he had recovered
his bike from the police station by showing a purchase receipt. Appellant testified that he
had asked his trial attorney to get "paperwork" from the city jail showing that he had
purchased the bike in question. However, the form entered into evidence at the hearing
as Defense Exhibit 1 reflected only that a mountain bike had been permanently released
to appellant on January 21, 2009. The form did not describe the circumstances under
which the release was made or what proof of ownership, if any, appellant was required to
provide.

 Moreover, appellant was charged with and found guilty of evading detention with a
vehicle. Whether the bike was stolen was not directly relevant to the question of whether
he was guilty of the offense charged; it was not a part of his defense at trial and was not
his only viable defense. See Strickland, 466 U.S. at 694; Castellano, 49 S.W.3d at 576. 
Without more, considering the quantum of evidence already known to counsel and whether
the known evidence would lead a reasonable attorney to investigate further, Martinez, 195
S.W.3d at 721, we conclude that appellant's counsel made a reasonable decision that
further investigation, including efforts to obtain the form from the CCPD, was unnecessary. 
See Wiggins, 539 U.S. at 521-23; see also Martinez, 195 S.W.3d at 721; Briggs, 187
S.W.3d at 466-67. Appellant has not shown that his trial attorney was ineffective for failing
to obtain such evidence, and we overrule his third issue. (3)

III. Improper Comments to Jury Regarding Dangers of Evading Detention

 Appellant urges, by his fourth issue, that the trial court made improper comments
to the jury panel which conveyed his opinion of the case. See Tex. Code Crim. Proc. Ann.
art. 38.05 (Vernon 1979) (providing that the judge shall not "at any stage of the proceeding
previous to the return of the verdict, make any remark calculated to convey to the jury his
opinion of the case"). Appellant complains of the following remarks made by the trial court
to the panel during voir dire: "We had a policeman get killed recently because somebody
failed to stop. In our case, I don't think anybody got killed, but it's a very dangerous thing
to do, not to stop when a policeman wants to stop you."

 No objection was made, and several panel members were then examined on
individual voir dire. Later, appellant's trial attorney moved for a mistrial, as follows:

 Right now, we would move for a mistrial, reason being, because you, when
talking to the jury, just right now, mentioned the case involving Officer
Alexander, and saying that this is a very serious crime, evading arrest, and
we had a police officer killed in that, so it's very serious. . . . We feel that that
is prejudicial and feel that the only way that that can be cured is this entire
panel has to be--a mistrial needs to be declared and we need to get a whole
entire new panel.

 The complaining party must timely raise a complaint that the trial court's comments
violate article 38.05 in order to preserve error on appeal. See Tex. R. App. P. 33.1;
Resendez v. State, 160 S.W.3d 181, 189-90 (Tex. App.-Corpus Christi 2005, no pet.) (en
banc). In addition, a party who fails to request an instruction to disregard will have forfeited
appellate review of that class of events that could have been "cured" by such an
instruction. Young v. State, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004) (en banc). 
Specifically, an instruction by the trial court to the jury to disregard any comments made
by the court is generally sufficient to cure any error arising from its statements. Marks v.
State, 617 S.W.2d 250, 252 (Tex. Crim. App. 1981); Peavey v. State, 248 S.W.3d 455, 470
(Tex. App.-Austin 2008, pet. ref'd); Aschbacher v. State, 61 S.W.3d 532, 539 (Tex.
App.-San Antonio 2001, pet. ref'd).

 In this case, appellant neither timely objected to the trial court's comments nor
requested an instruction to disregard the comments in question before requesting a
mistrial. (4) Therefore, appellant has waived his claim that the trial court made improper
comments to the jury panel. See Young, 137 S.W.3d at 69-70. Appellant's fourth issue
is overruled.

IV. Disproportionate Sentence Appellant argues, in his fifth issue, that his sentence of forty years, under the
circumstances of this case, is disproportionate to the gravity of his offense. However,
when the sentence imposed is within the punishment range and is not illegal, as in this
case, the failure to specifically object to an alleged disproportionate sentence in the trial
court or in a post-trial motion waives any error on appeal. Noland v. State, 264 S.W.3d
144, 151 (Tex. App.-Houston [1st Dist.] 2007, pet ref'd); Trevino v. State, 174 S.W.3d 925,
927-28 (Tex. App.-Corpus Christi 2005, pet. ref'd); see Tex. R. App. P. 33.1(a).

 Appellant directs us to no place in the record where he objected to the sentence as
being disproportionate or constitutionally improper. And he did not raise such a claim in
his motion for new trial. Thus, appellant waived error on his present claim that the
sentence was disproportionate. We overrule the fifth issue.

V. Lesser-Included Offense

 By his sixth issue, appellant contends the trial court erred in refusing his request for
submission of a jury instruction on the offense of fleeing or attempting to elude a police
officer under section 545.421 of the Texas Transportation Code. See Tex. Transp. Code
Ann. § 545.421 (Vernon Supp. 2009). Appellant claims that section 545.421 of the
transportation code is a lesser-included offense of the state-jail felony of evading arrest
under penal code section 38.04, the offense for which he was convicted. See Tex. Penal
Code Ann. § 38.04. However, the court of criminal appeals has concluded otherwise,
affirming the Houston First District Court of Appeals's determination that the transportation
code offense of fleeing or attempting to elude a police officer is not a lesser-included
offense of the penal code offense of evading detention by use of a motor vehicle. See
Farrakhan v. State, 247 S.W.3d 720, 720-24 (Tex. Crim. App. 2008) (affirming Farrakhan
v. State, No. 01-04-01205-CR, 2006 Tex. App. LEXIS 103, at *2-8 (Tex. App.-Houston [1st
Dist.] Nov. 30, 2006)); Peavey, 248 S.W.3d at 468-69 (listing the differing elements of the
two offenses).

 Appellant relies on Klapuch v. State as support for his lesser-included-offense
argument. See No. 13-05-025-CR, 2005 Tex. App. LEXIS 9121, at *4-5 (Tex.
App.-Corpus Christi 2005, no pet.) (mem. op., not designated for publication). In Klapuch,
however, we did not address the first prong of the analysis set out in Threadgill v. State,
146 S.W.3d 654, 665 (Tex. Crim. App. 2004) (en banc)--whether the offense is actually
a lesser-included offense of the offense charged--because the State did not dispute that
prong of the analysis. See Klapuch, 2005 Tex. App. LEXIS 9121, at *3-4. We assumed,
without deciding, that it was a lesser-included offense and concluded, under Threadgill's
second prong, that there was no evidence that Klapuch knew that the officer was
attempting lawfully to arrest or detain him. See id., 2005 Tex. App. LEXIS 9121, at *4-5. 
Therefore, Klapuch provides no precedential value for this Court on the issue now before
us.

 Therefore, following the holding in Farrakhan, we conclude that appellant was not
entitled to a charge on the transportation code offense. Farrakhan, 247 S.W.3d at 720. 
Because the transportation code offense is not a lesser-included offense of the charged
offense, we conclude that the trial court did not err in refusing to submit appellant's
requested instruction. We overrule appellant's sixth issue.VII. Instruction on Range of Punishment

 Appellant asserts by his seventh issue that the trial court erred when it improperly
instructed the jury on the range of punishment under section 12.42(d) of the Texas Penal
Code. See Tex. Penal Code Ann. § 12.42(d). Appellant claims that fundamental error
occurred when the trial court instructed the jury on the range of punishment because, as
a policy matter, it is inherently unfair to apply habitual felony offender status to any state
jail felony case. However, appellant was not convicted of a state jail felony, but of a third-degree felony, by virtue of the combination of his use of a vehicle and his prior conviction. 
See id. § 38.04(b)(2)(A). Accordingly, appellant's policy argument against applying the
habitual felony statute to a state jail felony does not apply in this case. We overrule
appellant's seventh issue.

VIII. Right to Testify

 By his eighth issue, appellant complains that he was denied his right to testify during
the guilt/innocence phase of trial because he was improperly counseled to believe that
because of his prior convictions, he could not testify. See Tex. Const. art. I, § 10
(providing that "in all criminal prosecutions the accused shall have . . . the right of being
heard by himself or counsel, or both"); Tex. Code Crim. Proc. Ann. art. 38.08 (Vernon
2005) (setting out that "any defendant in a criminal trial shall be permitted to testify in his
own behalf"); see also Smith v. State, 286 S.W.3d 333, 338 n.9 (Tex. Crim. App. 2009)
(citing Rock v. Arkansas, 483 U.S. 44, 51-52 (1987)) (explaining that a criminal defendant
has a constitutional right to testify based on the due process clause of the Fourteenth
Amendment and the Fifth and Sixth Amendments of the United States Constitution; a right
that can be knowingly and voluntarily waived only by the defendant, not by his counsel). 
While it is the defendant who must make the ultimate decision on whether to testify,
counsel is permitted to advise him on the advantages and disadvantages. Sapata v. State,
574 S.W.2d 770, 771 (Tex. Crim. App. 1978); Hebert v. State, 836 S.W.2d 252, 255 (Tex.
App.-Houston [1st Dist.] 1992, pet. ref'd) (op. on rehr'g).

 The record in the present case reveals that during the guilt/innocence phase of the
trial, the State offered two witnesses and then rested. Appellant did not testify, although
he now asserts that he wanted to testify at trial to tell the truth about what happened in the
alleyway and to explain his prior convictions if he had to do so.

 At the hearing on his motion for new trial, appellant provided the following testimony
on direct examination that he contends supports his claim:

 Q: [Counsel] Okay. You did not testify at the guilt/innocence phase;
is that correct?


 A: [Appellant] No.


 Q: Okay. And what was [trial counsel's] explanation for
you not testifying, or what was her explanation
regarding the law in regards to your testimony?


 A: That they would bring my past up.


 Q: Okay. Your past meaning you had two priors, that's
why you were indicted with the habitual?


 A: Yes.


 Q: Okay. So she told you that if you testified during the
guilt/innocence before the jury, they could learn about
your prior felonies, correct?


 A: Yes.


 Q: Did you understand you still had the right to testify?


 A: Not really.


 Q: Okay. You believed it meant you couldn't testify?


 A: Well, not without them bringing my past up.


 . . . .


 Q: So you realized you could testify, they would just bring
it up?


 A: Yeah, and that's why she filed a motion from the
beginning to suppress my past.


Appellant also relies on the following testimony provided during his cross-examination:

 Q: [The State] Now, it sounds like you knew you could have testified at
trial, but you made a decision not to tell people that you
were still on parole . . . for . . . two burglaries of a
building?

 

 A: [Appellant] No. The way she was pursing [sic] the case I couldn't
testify because I didn't actually know what to say.

 

 . . . .

 

 Q: Why didn't you just tell the truth?

 

 A: Then it would have brought my past up. I couldn't
testify in my trial.

 

 Q: Well, that's a decision that you made after talking to
your counsel?

 

 A: The only time that she said that I could testify was after
I was found guilty, that I could actually get up there and
I didn't. I chose not to.

 

 Q: Would that be because your history would have already
been admitted? At punishment, your entire criminal
history is admitted.


 A: Yeah, but then--

 

 Q: At guilt/innocence it's not. You know, if you had
testified at guilt/innocence, you understand that you
would have at least the minimum of your two '89
burglaries of a vehicle would have been admitted?

 

 A: My two '89 burglaries of a--

 

 Q: I'm sorry, burglary of a building, that you received 20-year sentences that you're still on parole for?

 

 A: Well, yeah, it was irrelevant. They indicted me as a
habitual. Yeah, they were gonna bring my past up.

 

 Q: But if you had testified it would have come out during
guilt/innocence?

 

 A: Yes.

 

 Q: So it sounds like you understood what were the
consequences of testifying and not testifying, right?

 

 A: No.


 Appellant also provided the following testimony on direct examination concerning
his decision on whether to testify at the guilt/innocence phase of the trial:

 Q: [Counsel] Were you willing to risk the jury hearing about your past
so you could present this defense on your behalf?


 A: [Appellant] Well, I don't really know. I mean, I kind of thought [my
trial counsel] knew what she was doing. She said that
she had talked to the guy that was actually there that
was the [S]tate's witness and she was--he was
supposed to be our witness too.


 Q: Okay.


 A: So it kind of threw me off, you know. I mean, she made
it sound like she really had some good defense or
something.


The State contends that this testimony supports its position that the testimony from the
hearing clearly shows that appellant followed his trial counsel's advice not to testify at the
guilt/innocence phase of the trial because of the consequences and possible impeachment
with his priors, not because he thought he had no right to testify. In addition, the State
directs us to the following testimony provided by appellant's trial counsel, which it argues
supports its position:

 Q: [the State] And did you go over his--the defendant's right to
testify?


 A: [Trial Counsel] Yes. We went over that in detail. I explained to him
that he had a right to testify. My concern was that he
had convictions that would come in which is why we
filed a motion in limine. The motion in limine was
granted, but if he was to get up to testify, he still ran the
risk of his history coming in, and we went over that in
detail.


 Q: And to your recollection, did his burglary conviction, his
felony convictions come out during the guilt/innocence?


 A: No, they did not, and that was because he did not
testify.


 Q: But at least some of those convictions would have been
relevant if he had testified?


 A: Yes, it would have harmed his credibility, yes.


 Q: And was your trial strategy to get a conviction for the
lesser included misdemeanor evading?


 A: Yes, that was a trial strategy. . . .


 Q: And if he--in your opinion, if he had given testimony
similar to what he had given today, or what he gave to
you earlier, would he have appeared credible to a jury?


 A: No, I do not believe he would have appeared credible
and that's what we told him. We strongly
recommended that he not testify because of his history,
and he followed our advice. He asked for our advice
and that's what we recommended.


 Q: But ultimately, it was his decision?


 A: Ultimately, it was his decision not to testify. And once
punishment came along, we told him, I mean, at this
point you kind of explain, you know, why you have the
history that you do, and he said he didn't want to.


 Q: So even after--in punishment, after his history had
been admitted through other means, he still didn't want
to testify?


 A: Yes, he still did not want to testify. And again, that was
his election.

 As set out by the Texas Criminal Court of Appeals in Johnson v. State, because
"defense counsel shoulders the primary responsibility to inform the defendant of his right
to testify, including the fact that the ultimate decision belongs to the defendant," a claim by
a defendant that he was denied his right to testify is properly addressed under the
Strickland framework for ineffective-assistance-of-counsel claims. 169 S.W.3d at 235, 239
(Tex. Crim. App. 2005); see Smith, 286 S.W.3d at 341-42. Appellant raises no claim here
that his trial counsel's advice not to testify was deficient. Nonetheless, even if we assumed
appellant's argument was an ineffective-assistance-of-counsel claim, it fails.

 The record shows that appellant discussed his right to testify with his trial counsel. 
His counsel specifically testified that she explained to appellant that he had a right to testify
and went over it in detail with him. She testified that ultimately it was appellant's decision
not to testify. Counsel also testified that she discussed trial strategy with appellant,
including what could happen should he testify at the guilt/innocence phase of trial. 
Although appellant argues that he was misled by his trial counsel into believing he could
not testify during the guilt/innocence phase of the trial, the record does not support this
assertion. Appellant testified that his trial counsel's explanation for not testifying was that
"they would bring [his] past [prior felonies] up." Appellant believed he could not testify
"without them bringing [his] past up" and that was "why [his trial counsel] filed a motion . . .
to suppress [his] past." Appellant also stated that he believed he could not testify because
he did not know what to say. He explained that if he told the truth, his past, including his
two prior burglaries, would be brought up; therefore, he could not testify at trial. Appellant
also disagreed that he understood the consequences of testifying or not testifying and that
he "thought [trial counsel] knew what she was doing" and "kind of threw [him] off," making
it sound like she had a good defense.

 Based on our review of the record, we cannot conclude that it supports appellant's
contention that appellant's counsel's assistance was ineffective because she led him to
believe that, because of the prior convictions, he could not testify, that he had to give up
his right to testify. Rather, appellant's decision not to testify was based on his
understanding that the jury would become aware of his prior convictions. Counsel
explained this to him in detail. Therefore, indulging a strong presumption that "counsel's
conduct fell within a wide range of reasonable representation" and that, under the
circumstances, the challenged action might be considered sound trial strategy, we
conclude that appellant has failed to bring forth any record indicating counsel misled him
into thinking that he could not testify or that counsel's performance fell below an objective
standard of reasonableness. Strickland, 466 U.S. at 688, 690-94; Salinas, 163 S.W.3d at
740; Garcia, 57 S.W.3d at 440. Appellant's eighth issue is overruled.IX. Prior Conviction

 Appellant argues, by his ninth issue, that appellant's "prior conviction used to
enhance the charge from a state jail felony to a third-degree felony should not have been
read to the jury panel during voir dire, thus opening it up for discussion and unnecessary
attention." However, appellant failed to object to the statements concerning the allegation
of a prior conviction for evading arrest, at the time they were made. See Tex. R. App. P.
33.1; Jasper v. State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001) (refusing to find
fundamental error with regard to comments that did not "bear on the presumption of
innocence or vitiate the impartiality of the jury"). Moreover, even had error been preserved,
the comments were proper. A prior conviction requirement for third-degree evading arrest
is an element of the offense that must be proved at the guilt/innocence phase of trial. 
Calton, 176 S.W.3d at 234-36. And "prior convictions [are] the legitimate subject of voir
dire, opening statements, and closing arguments." Hollen v. State, 117 S.W.3d 798, 802
(Tex. Crim. App. 2003). Accordingly, we conclude that it was not error to mention the prior
conviction to the panel at voir dire. Appellant's ninth issue is overruled.

X. Improper Comments to Jury Regarding Range of Punishment

 Appellant complains by his tenth issue that the trial court made improper comments
to the jury panel during voir dire concerning the range of punishment and prior felonies,
thereby "improperly impl[ying] by [its] comments that the appellant had progressively
worked his way up committing other crimes in the past and that is why the punishment
range was so high." By this argument, as in issue four above, appellant is complaining that
the trial court made improper comments to the jury panel which conveyed his opinion of
the case. See Tex. Code Crim. Proc. Ann. art. 38.05. And again, as set out above, the
complaining party must timely object that the trial court's comments violate article 38.05
in order to preserve error on appeal. See Tex. R. App. P. 33.1; Resendez, 160 S.W.3d at
189-90. Appellant failed to timely object to the trial court's remarks to the jury panel
regarding punishment. Thus, appellant has not preserved error for our review. We
overrule the tenth issue.

XI. Hearing Without Appellant Present

 In his eleventh issue, appellant contends that the trial court erred in conducting a
hearing without his presence. See Tex. Code. Crim. Proc. Ann. art. 33.03 (Vernon 2006)
(providing criminal defendants with a statutory right to be present during their trials and
allowing criminal defendants to be absent, if they choose, after pleading to the indictment
in a bench trial or after jury selection in a jury trial); Routier v. State, 112 S.W.3d 554, 575
(Tex. Crim. App. 2003). The State responds that appellant's trial counsel's waiver of
appellant's presence was not erroneous, and even if there was error, it was harmless. We
agree.

 Prior to the beginning of the punishment phase of appellant's trial, a hearing was
held to discuss the charge and the admissibility of certain evidence. At the end of the
hearing, the trial court inquired about appellant's absence. Appellant's counsel responded
that he "was fine with doing that . . . hearing without [his] client being [present]."

 When a defendant's attorney waives his client's right to be present at trial, the
defendant must show that the waiver was erroneous or that he was not aware of the
proceedings and that the trial court erred in accepting the waiver. Routier, 112 S.W.3d at
576. The record, in this case, shows that counsel waived appellant's presence. Appellant
does not specifically allege that the waiver was erroneous. See id. The record does not
reveal why appellant was not present. See id. And although appellant alleges that he was
unaware of the proceedings, there is no evidence to support this allegation. See id. 
Finally, he has not shown that the trial court erred in accepting his attorney's waiver of his
presence. See id.

 Moreover, even had there been supporting evidence, we would conclude that
appellant's absence was harmless because the absence of the defendant when only
questions of law are considered will not cause reversal unless the presence of the
defendant bears "a reasonably substantial relationship to the opportunity to defend." 
Adanadus v. State, 866 S.W.2d 210, 219-20 (Tex. Crim. App. 1993) (explaining that a
defendant must show that his presence would have furthered the defense in some way and
concluding that "[b]ecause appellant's presence did not bear a 'reasonably substantial
relationship to the opportunity to defend', no harm or prejudice was shown as a result of
his absence"); Guerra v. Sate, 760 S.W.2d 681, 696 (Tex. App.-Corpus Christi 1988, pet.
ref'd) (quoting Mares v. State, 571 S.W.2d 303, 307 (Tex. Crim. App. 1978)). In this case,
matters discussed at the hearing concerned the charge and the admissibility of certain
evidence. These matters raised only legal issues. We cannot conclude that appellant,
himself, would have had anything to contribute in the way of additional facts or strategy
decisions. Thus, the presence of appellant at the hearing did not bear "a reasonably
substantial relationship to the opportunity to defend." Adanadus, 866 S.W.2d at 220. 
Accordingly, error, if any, in failing to secure appellant's presence at the hearing was
harmless. Appellant's eleventh issue is overruled.XII. Improper Jury Argument

 Finally, by his twelfth issue, appellant complains of improper jury argument by the
prosecution--argument asking the jury to be the voice of the community in assessing
punishment. (5) However, failure to object to jury argument forfeits the right to raise the issue
on appeal. See Threadgill, 146 S.W.3d at 667, 670; Simpson v. State, 119 S.W.3d 262,
268 (Tex. Crim .App. 2003); Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)
(en banc). Appellant did not object to this argument. Furthermore, while the prosecutor
may not ask the jury to convict the defendant because the community demands, desires,
or expects it, he may properly ask the jury to be the voice of the community and argue that
its decision should reflect the community's desire for strong law enforcement. See Borjan
v. State, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990) (en banc); In re A.J.G., 131 S.W.3d
687, 692-93 (Tex. App.-Corpus Christi 2004, pet. denied). In this case, the complained-of
argument asked the jury to be the voice of the community and in its decision, to reflect the
community's desire for strong law enforcement. Accordingly, the argument was not
improper. We overrule appellant's twelfth issue.

xii. Modification of Judgment

 The Texas Rules of Appellate Procedure give this Court authority to modify
judgments sua sponte to correct typographical errors and make the record speak the truth. 
Tex. R. App. P. 43.2; French v. State, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (en
banc); Rhoten v. State, 299 S.W.3d 349, 356 (Tex. App.-Texarkana 2009, no pet.); Gray
v. State, 628 S.W.2d 228, 233 (Tex. App.-Corpus Christi 1982, pet. ref'd). In this case,
the trial court's judgment refers to the statute for the offense under which appellant was
convicted as section 38.04(b)(2)(B) of the Texas Penal Code. See Tex. Penal Code Ann.
§ 38.04(b)(2)(B) (Vernon Supp. 2009). Section 38.04(b)(2)(B) provides that the offense
becomes a third-degree felony because of serious bodily injury caused to another who is
neither the actor nor the officer from whom the actor is fleeing. Id. Our review of the
record shows that the correct statute for the offense is section 38.04(b)(2)(A). See id. §
38.04(b)(2)(A). Therefore, we hereby modify the judgment to indicate that the statute
under which appellant was convicted is section 38.04(b)(2)(A) of the Texas Penal Code.

xiii. Conclusion

 We affirm the judgment as modified.


 NELDA V. RODRIGUEZ

 Justice


Do not publish.

Tex. R. App. P. 47.2(b).


Delivered and filed the

15th day of July, 2010.
1. Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite
them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. See
Tex. R. App. P. 47.4.
2. Appellant pleaded true to the enhancement portion of the indictment setting out that appellant had
a prior conviction for evading detention, thus, raising the alleged offense in this case to a felony. See Tex.
Penal Code Ann. § 38.04(b)(2)(A) (Vernon Supp. 2009).
3. Having concluded that counsel's assistance was not ineffective for failing to object to evidence of the
"stolen bike" or for failing to obtain the receipt releasing it, there is no support for appellant's argument that
because of the cumulative nature of trial counsel's mistakes his substantial rights were violated and due
process denied.
4. At voir dire, the relief sought may be more properly characterized as a motion to quash the venire
panel, rather than as a motion for mistrial. See Mendoza v. State, 552 S.W.2d 444, 446-47 (Tex. Crim. App.
1977); Capps v. State, 244 S.W.3d 520, 527 (Tex. App.-Fort Worth 2007, pet. ref'd) (memo. op., designated
for publication) (generally equating review of the trial court's decision to deny a motion to quash the panel with
later review of its denial of a motion for mistrial, with regard to claims that improper comments tainted the
potential or actual jurors). Nonetheless, our review in this case, whether it be a motion to quash or a motion
for mistrial, is the same.
5. Appellant complains of the following argument:


 As 12 members of the community--you're 12 members of the community, taken
from the community at large to say what the community feels about this. Now, as the
community, we are asking you to say it's not okay to run from police, it's not okay to not be
very good at it, it's not okay to be suspicious in utility easements where there are backyards
that can easily be jumped into and out of when there's no other eyes on the street.


 I'm asking you that this defendant is guilty of using a vehicle and evading from
Stephen Cox. As a community say, "This is not all right [sic]. We are tired of crime here." 
Find the defendant guilty.