**Opinion issued March 3, 2020.**



In The

# Court of Appeals

### For The

# First District of Texas

_____

## NO. 01-18-00975-CR

_____

## JAMAL JAI TURNER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1400330**

---

## MEMORANDUM OPINION

A jury convicted appellant Jamal Jai Turner of murder and the trial court assessed his punishment at twenty-five years' incarceration. In three issues, appellant argues that the evidence is insufficient to support his conviction and the

jury's rejection of his justification defense of self-defense and defense of a third party. We affirm the trial court's judgment.

**Background**

Appellant and his friends, Lauren Reyes, her boyfriend, Robert "Gage" Adams, and Gage's friend, Dalton Andrepont, went to a bar to celebrate appellant's college graduation and his impending military service. Ross Warax, Jana Cronin, and Ravi Jethva were also at the bar celebrating Jana's promotion at work.

Jana and Lauren had a verbal altercation in the ladies' room around 1:30 a.m. After Lauren told the bartender, Jenny, about what had happened, Jenny told Jana and her friends to leave the bar. According to witnesses, Jana was drunk and belligerent and started yelling and screaming at people and lunging at Lauren. At that point, Ross pulled Jana out the door and into the parking lot. As they were leaving, Ravi saw Ross say something to appellant. Appellant followed them outside the bar and began arguing with Ross. Appellant's friends followed, along with a group of other bar patrons and employees. Jenny attacked Jana and knocked her to the ground. Someone helped Jana into the passenger seat of her car, which was parked in front of the bar, while Ross got into the driver's seat. Several people from the appellant's group were standing around the car, but Ross managed to drive away.

According to Jana, after they noticed that Ravi had not followed them, Ross made a U-turn after he left the parking lot and returned to the bar. Ravi was standing

2

near his car talking to the group of bystanders. Ross did not see Ravi initially and turned around in the parking lot. When he stopped to talk to Ravi, Ravi made eye contact with Ross and told him to leave, which Ross tried to do. According to Ravi, appellant saw Ross's car and yelled "F this" and then ran to his car.

All the eyewitnesses, except for Jana and Ravi, testified that Ross was driving erratically and recklessly, and they were scared when he returned to the parking lot because he was driving fast and appeared to be trying to run people over. According to Dalton, Ross came "barreling" through the parking lot attempting to hit him and others and he had to jump into a ditch to avoid the car. Nick, a bar employee, testified that Ross "kept passing through [the parking lot] at high rates of speed, trying to hit people." Nick estimated that Ross came "back through, like, two or three times."

Ravi, who heard a "bunch of popping noises" as Ross was driving out of the parking lot the second time, saw appellant and another man, later identified as Chad, standing near the exit. Although he did not see a handgun, Ravi testified that both appellant and Chad appeared to be pointing handguns in the direction of Ross's car.[1]

Nick also testified that Ross's car was turning onto the street when the shooting happened. According to Nick, appellant "started shooting after [Ross] passed" him; "it was kind of like from the back of the car." According to Gage, Ross

---

[1] Chad, who admitted to firing warning shots, was also arrested and charged with murder.

3

had already exited the parking lot and he "swung wide again like to make the U-turn; and that's when [appellant] started firing his gun."

Jana, who did not hear any gunfire, testified that after they exited the parking lot a second time, Ross slumped over and fell into her lap. The car then hit a curb, drove over a median and crashed into a store window.

Appellant testified that he and his friends had been hanging out at the bar when Lauren told him that she had gotten into an altercation with Jana in the ladies' room. When Ross and Jana were leaving the bar, Ross turned around and made a disrespectful comment to appellant. Appellant testified that everyone started arguing at that point, but he denied exchanging any "heated words" with Ross and claimed that he was just trying to calm everyone down.

According to appellant, the people in the bar were agitated and they followed Ross and Jana into the parking lot. Appellant testified that he was pushed outside by the crowd of people trying to exit. According to appellant, Ross and Jana became more aggressive outside and started lunging at people and trying to hit them. Appellant testified that he was still trying to defuse the volatile situation when Ross abruptly backed out of the parking spot. Appellant heard an engine rev moments before Ross hit him with the car.

According to appellant, he rolled over the top of the hood and landed on the driver's side of the vehicle. The car drove over appellant's right foot and he punched

4

out one the car's windows. Dalton, Gage, and Chad came over to check on appellant. Appellant testified that Ross drove out of the parking lot, but then made an abrupt U-turn and drove very fast though the parking lot and aimed the car in his direction. "I thought he was coming to try to hit me again and kill me."

Appellant testified that he retrieved a gun from his car because he feared for his life. He stood in a grassy area between the parking lot and the roadway, away from the crowd of people near the bar's entrance. According to appellant, Ross's vehicle exited the parking lot and drove on the shoulder of the road towards where he was standing. Appellant testified that he felt threatened by Ross and feared for his life because Ross had already hit him with the car and had attempted to hit him again. As the vehicle approached, appellant "raised up [his] weapon because [he] was intent on defending [him]self." According to appellant, Ross "kept coming towards me, kept coming, kept coming. And the very last second he veered off abruptly. And at that point in time, I fired simultaneously, striking his vehicle."

After he fired his weapon, appellant got into his car and left the bar. Harris County Precinct 4 Deputy Constable S. Sebastian stopped appellant's car shortly thereafter. Sebastian, who was in the vicinity for an unrelated call, had heard screeching tires and gunshots and was heading to the scene when he saw appellant driving slowly. When he asked appellant if he needed any help, appellant said that he had heard gunshots and was leaving the area. He also told Sebastian that he had

a gun in the car. When he searched the vehicle, Sebastian found a Smith & Wesson pistol with a laser sight.

The lead crime scene investigator with the Harris County Sheriff's Office testified that he determined by using trajectory rods that someone had fired at Ross's vehicle from behind. Based on the evidence collected, the investigator determined that Ross's car was on the road when the shots were fired, and the car was in front of the shooter. The assistant medical examiner who performed the autopsy testified that Ross died from a single gunshot wound to the back. Forensic testing showed that the bullet that killed Ross came from the gun Sebastian found in appellant's car.

The trial court included instructions regarding self-defense and defense of a third person in the jury charge.

## Sufficiency of the Evidence

In his first issue, appellant argues that the evidence is insufficient to support his murder conviction because the State failed to establish that he intended to kill Ross.

### A. Standard of Review

We review the legal sufficiency of the evidence by considering all the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Williams v. State*,

6

235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We defer to the fact finder's role to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*; *see also Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011) ("On review, this Court determines whether the necessary inferences made by the trier of fact are reasonable, based upon the cumulative force of all the evidence.").

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *See* TEX. PENAL CODE § 19.02(b)(1), (2). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a). A person who intentionally commits an act clearly dangerous to human

7

life is usually held responsible for the result of that act. If he commits the act with intent to cause serious bodily injury, and causes a death, he is guilty of murder. *See id.* §§ 1.07(a)(46), 6.03(a), 19.02(b)(1), (2).

"Intent is almost always proven by circumstantial evidence." *Trevino v. State*, 228 S.W.3d 729, 736 (Tex. App.—Corpus Christi 2006, pet. ref'd). "Direct evidence of the requisite intent is not required . . . ." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). Finders of fact are allowed to "'infer intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime and from the nature of wounds inflicted on the victims.'" *Id.* (quoting *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)). A jury may also infer knowledge from such evidence. *See Stahle v. State*, 970 S.W.2d 682, 687 (Tex. App.—Dallas 1998, pet. ref'd).

Further, the intent to kill a complainant may be inferred from the use of a deadly weapon in a deadly manner. *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993); *Watkins v. State*, 333 S.W.3d 771, 781 (Tex. App.—Waco 2010, pet. ref'd). If the defendant uses a deadly weapon in a deadly manner, the inference of intent to kill is almost conclusive. *See Adanandus*, 866 S.W.2d at 215; *Watkins*, 333 S.W.3d at 781; *Trevino*, 228 S.W.3d at 736. A firearm is a deadly weapon per se. *See* TEX. PENAL CODE § 1.07(a)(17).

**B.     Analysis**

Appellant argues that the evidence is insufficient to show that it was his conscious objective or desire to cause the complainant's death or that he was aware that his conduct was reasonably likely to cause the complainant's death.

According to appellant, "The only evidence that would support the jury's conclusion that [his] conscious objective or desire was to cause Ross Warax's death or that he was aware that his conduct was reasonably likely to cause Ross Warax's death was the evidence that [appellant] used a firearm." It is undisputed that appellant intentionally fired his gun at the vehicle that Ross was driving. Under Texas law, a jury can reasonably infer from appellant's use of a firearm in a deadly manner, i.e., by firing it in the direction of an occupied vehicle, that appellant intended to kill the vehicle's occupant. *See Adanandus*, 866 S.W.2d at 215 (stating that if defendant uses deadly weapon in deadly manner, inference of intent to kill is almost conclusive); *see also Trevino*, 228 S.W.3d at 738 (holding "jury could reasonably infer that by opening fire with a semi-automatic weapon on an occupied vehicle, Trevino specifically intended to kill either or both of the occupants of the vehicle"); *cf. Small v. State*, No. 01-14-00421-CR, 2016 WL 4126725, at \*6–7 (Tex. App.—Houston [1st Dist.] Aug. 2, 2016, pet. ref'd) (mem. op., not designated for publication) (holding that, as exclusive finder of fact, jury was free to disbelieve defendant's testmony that he fired weapon by "accident" and "didn't mean to hurt"

9

anyone, and "the jury could have reasonably inferred [defendant's] intent to kill the complainant solely from his use of a deadly weapon at close range").

Nevertheless, appellant argues that the evidence that he fired at Ross's car is insufficient to support a finding of intent because we must consider the entire record, including circumstantial evidence of motive, and there was no evidence that he had any motive for shooting his firearm at the car "beyond stopping the vehicle from hurting or killing someone." *See Nelson v. State*, 405 S.W.3d 113, 124 (Tex. App.— Houston [1st Dist.] 2013, pet. ref'd) (stating motive is relevant as circumstantial evidence when determining whether defendant committed alleged offense). The record, however, reflects the hostile nature of the interaction between Ross and appellant. Ross made a disrespectful comment to appellant as Ross left the bar and appellant ran out the door after him and started a verbal altercation with Ross and told Ross not to "mess" with him. There is also evidence that when Ross began to leave the parking lot a few minutes later, Ross hit appellant with his car, causing appellant to roll over the hood. Appellant then punched out one of the car's windows with his bare hand when Ross ran over appellant's foot as he drove away. There is testimony that when Ross made an abrupt U-turn and returned to the parking lot moments later, appellant yelled "F this" and ran over to his car and retrieved his handgun. Appellant then fired several shots at Ross's car as Ross was leaving the parking lot. From this evidence, the jury could have rationally inferred that appellant

had a motive to kill or seriously injure Ross. Appellant's testimony may support an alternative inference of motive. However, the jury's rejection of that inference is reasonable given the cumulative force of all the evidence, including appellant's act of intentionally firing a handgun at Ross's car. *See Adames*, 353 S.W.3d at 860. We must defer to the jury's resolutions of any conflicts in testimony and the weight to give the evidence. *See Brooks v. State*, 323 S.W.3d 893, 900 (Tex. Crim. App. 2010); *Williams*, 235 S.W.3d at 750.

Considering all the evidence in the light most favorable to the jury's verdict, we conclude that the jury could have found that appellant had a conscious objective or desire to engage in an act clearly dangerous to human life with the intent to cause serious bodily injury which resulted in Ross's death, or that appellant was aware that his conduct was reasonably likely to cause Ross's death. *See Jackson*, 443 U.S. at 319.

We overrule appellant's first issue.

## Self-Defense and Defense of a Third Person

In his second and third issues, appellant argues that the evidence is insufficient to support the jury's determination that he did not act in self-defense or in defense of a third person when he shot Ross.

**A.     Standard of Review**

When a jury is charged on a justification defense such as self-defense or defense of a third person, a verdict of guilt is generally an implicit rejection of that defense. *Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018) (citing *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)). Appellate review of a jury's rejection of a justification defense is controlled by the general rules of legal sufficiency review: the evidence is viewed in the light most favorable to the verdict, and appellate courts defers to any implied credibility determinations the jury made. *Braughton*, 569 S.W.3d at 608–09 (citing *Saxton*, 804 S.W.2d at 914).

The defendant bears the burden to produce evidence supporting the justification defense, while the State bears the burden of persuasion to disprove the raised issue. *Braughton*, 569 S.W.3d at 608; *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton*, 804 S.W.2d at 914. The defendant's burden of production requires him to adduce some evidence that would support a rational finding in his favor on the defensive issue. *Braughton*, 569 S.W.3d at 608 (citing *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013)). By contrast, the State's burden of persuasion "'is not one that requires the production of evidence; rather it requires only that the State prove its case beyond a reasonable doubt.'" *Braughton*, 569 S.W.3d at 608 (quoting *Zuliani*, 97 S.W.3d at 594).

12

**B.      Self-Defense**

Deadly force used in self-defense is a defense to a murder prosecution if the use of deadly force is justified under Penal Code Chapter 9. *See* TEX. PENAL CODE §§ 9.02, 9.31–.34; *Braughton*, 569 S.W.3d at 606. Generally, "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE § 9.31(a). To use deadly force in self-defense, the actor (1) must be authorized to use force under section 9.31, and (2) must reasonably believe that deadly force is immediately necessary (A) to protect himself against other's use or attempted use of unlawful deadly force, or (B) to prevent other's imminent commission of aggravated kidnapping, murder, sexual assault or robbery. *Id.* §§ 9.31(d), 9.32(a). "Reasonable belief" is defined as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* §1.07(a)(42).

**C.      Defense of a Third Person**

With respect to defense of a third person, "[a] person is justified in using deadly force against another to protect a third person if: (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under [Section 9.32] in using . . . deadly force to protect himself against the . . . unlawful deadly force he reasonably believes to be threatening the third person he seeks to

protect; and (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person." *Id.* § 9.33; *Henley v. State*, 493 S.W.3d 77, 89 (Tex. Crim. App. 2016) ("[A] defendant is justified in defending a third person if, under the circumstances as the defendant reasonably believes them to be, the third person would be justified in defending himself.").

**D.    Analysis**

An actor's use of deadly force, either in self-defense or in defense of a third person, is only justified if the actor reasonably believes that deadly force is "immediately necessary" to protect himself or the third person. *See* TEX. PENAL CODE §§ 1.07(a)(42), 9.32(a), 9.31(d), 9.33. Although multiple witnesses testified that Ross was driving erratically in the parking lot, hit appellant with his car, and almost hit another bystander, multiple witnesses also testified that Ross's car was exiting the parking lot, and turning onto the street and away from appellant when the shots were fired. The State's expert witness also testified that Ross's car was on the road, in front of appellant, when appellant fired the fatal gunshot that struck Ross in the back. Although appellant testified that Ross was driving towards him when he fired his weapon, the jury could also consider the evidence that Ross was shot in the back and that there were no bullet holes in the front of the car. *See Braughton*, 569 S.W.3d at 611 (stating jury "is not permitted to disregard undisputed objective facts that can support only one logical inference"). Based on this evidence, we conclude

14

that the jury could have found from this evidence that an ordinary and prudent person in appellant's position could not have reasonably believed that it was "immediately necessary" to use deadly force to protect himself or a third person. *See* TEX. PENAL CODE §§ 1.07(a)(42), 9.32(a), 9.31(d), 9.33. We must defer to the jury's rational inferences and implied credibility determinations. *See Brooks*, 323 S.W.3d at 900; *Williams*, 235 S.W.3d at 750. Viewing the evidence in the light most favorable to the verdict, we conclude that there is sufficient evidence supporting the jury's rejection of appellant's justifications of self-defense and defense of a third person. *See Braughton*, 569 S.W.3d at 608–09.

We overrule appellant's second and third issues.

**Conclusion**

We affirm the trial court's judgment.


Russell Lloyd
Justice


Panel consists of Justices Lloyd, Kelly, and Goodman.

Do Not Publish.   TEX. R. APP. P. 47.2(b).